IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY HOLLIS KING, | ) | |
| ID # 1614301, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:14-CV-1121-N (BH) |
| | ) | |
| WILLIAM STEPHENS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the habeas petition should be **DENIED**.

## I. BACKGROUND

Johnny Hollis King (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

### A.    Factual and Procedural History

Petitioner was charged with ten counts of indecency with a child in the second degree, enhanced with two prior felony convictions, in case number 32,383-CR, in the 13th District Court of Navarro County, Texas. (doc. 7-7 at 11-13.) He pled "not guilty" to each count. (4 Reporter's Record (RR) 15.)[1] The state appellate court recounted the evidence at trial as follows:

King and Mary, a pseudonym for M.K.'s mother, had been together on and off for

---

[1]RR refers to the reporter's record of the trial proceedings.

approximately fifteen years. Mary's two younger daughters, M.K. and O.K., shared a twin bed in a bedroom in Mary's home that did not have a door on it. King would spend several nights a week at this residence between 2007 and early 2009, when he was arrested for these offenses.

M.K. was fourteen years old at the time of trial. She testified that during the relevant time periods, she would sleep on the outside of the bed and her sister, O.K., would sleep next to the wall. M.K. testified that "really every night unless he wasn't there," King would come into her room and touch her on the breast and/or genital area through her clothing. She would act like she was waking up when King did this, and he would "act like he was telling me to go to the restroom or getting a dirty dish or something that was sitting around." She testified that this began when she was eleven or twelve years old and continued until the end of 2008.

M.K. testified that one day in late 2008, King called her while she was out with some friends and as part of the conversation told her not to wear panties when she went to bed that night. Additionally, when they all got home, King said it to her again. Later that evening, M.K., Mary, and O.K. left the residence, and while they were gone, M.K. told Mary what King had told her and begged her mother not to go to sleep that night. They went back to their residence and played games until very early the next morning. When King went to the restroom, M.K., O.K., and Mary snuck out of the residence and went to a relative's home.

A few days later, M.K. was interviewed at the local child advocacy center and gave the same version of events. She attended therapy and told the therapist that King had been touching her for a long time. Additionally, M.K. had told her mother one time previously that King had touched her inappropriately, but King told Mary that he was just checking to see if M.K. had wet the bed. M.K. had a problem with bedwetting during the times that King resided with them, but apparently did not when he was out of the home.

At trial, M.K. described an event that took place in her home when she got in trouble for a note that she was accused of passing at school. She testified that King threatened to give her thirty licks if she did not remove her shorts and underwear and lay on a bed with her legs spread open, so she did so, although she fought him. King told her he needed to check to see if she was messing around with boys and touched her genital area "skin to skin." Additionally, at another time, M.K. testified to seeing King lying on top of O.K. in her mother's bed with one leg on the bed and one on the floor. When he saw M.K., he got off of O.K. and acted as though he was looking for shoes. She had come into the room because she heard the bed "moving real quick against the headboard against the wall." She had woken up one night to see King touch her sister on the buttocks, and moved closer to O.K. to protect her from King. O.K. denied any inappropriate behavior when she was interviewed at the child

2

advocacy center. M.K. further described an instance one night when King came into her room she saw his penis halfway out of his underwear next to her head but did not know if it was erect or not. At some point, King told M.K. he would f—— her up if she told anyone.

King testified on his own behalf and denied that he had ever touched M.K. in any manner while she was sleeping. He stated that he did go into the girls' room at night to turn off the television or radio, to get dirty dishes out of the room, or to tell M.K. that she needed to get up to go to the bathroom. King had been to prison six times and had a history of drug dealing and weapons violations. He was involved with three women while he was living with Mary. King believed that M.K. had made up the allegations at Mary's urging because her mother was upset that he was involved with other women.

The forensic interviewer from the children's advocacy center and M.K.'s therapist both testified regarding M.K.'s outcry and description of what King did to her. The forensic examiner testified that M.K. did not appear to have been coached by anyone. The therapist stated that she believed that M.K. was not faking.

*King v. State,* No. 10-09-395-CR, 2010 WL 3434634, at *2-3 (Tex. App. Waco, pet. ref'd).

On November 20, 2009, a jury found Petitioner guilty as charged and later sentenced him to 50 years' imprisonment for each count, to be served consecutively.  (doc. 7-7 at 89-99, 103-112, 124-143; doc. 7-11 at 71, 94-95.)  Petitioner filed a direct appeal, and his multiple counts of conviction were affirmed by the Waco Court of Appeals in September of 2010. *King v. State,* 2010 WL 3434634 at *10.  The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on March 9, 2011. *King v. State,* No. 1342-10 (Tex. Crim. App. 2010).

On May 23, 2012, Petitioner filed an application for state writ of habeas corpus challenging these convictions. *Ex parte King,* WR-77,813-01 at 64.  After the Texas Court of Criminal Appeals remanded the case for findings of fact on some of Petitioner's claims, and the trial court issued its findings of fact and conclusions of law, the Court of Criminal Appeals denied Petitioner's state writ application without written order on the findings of the trial court without a hearing on March 19,

2014. *Ex parte King,* WR-77,813-01, at cover. Petitioner filed his § 2254 petition on March 25, 2014. (doc.3 at 10.)[2] Respondent filed an answer and provided the state court records. (docs. 13, 19, 22).  Petitioner then filed a reply. (doc. 11.)

**B.   <u>Substantive Issues</u>**

Petitioner listed seven grounds for relief in the § 2254 petition:

(1) He was denied effective assistance of trial counsel because his attorney failed to:

> (A) object to an expert witness's testimony or request an instruction to disregard the testimony;

> (B) inform Petitioner of the consequences of giving his own testimony;

> (C) ask the forensic interviewer about a statement made by the complainant; and

> (D) request a ruling on the record regarding a specific juror's alleged bias.

(2) He was denied effective assistance of appellate counsel when his attorney failed to:

> (A) challenge the trial court's refusal to question a juror about potential bias;

> (B) challenge the trial court's admission of irrelevant extraneous acts by Petitioner; and

> (C) research and present an adequate argument to challenge the "disabled" juror.

(doc. 3 at 6-7a.)

## II.   AEDPA STANDARD

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Title

---

[2]*See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (for purposes of determining the applicability of AEDPA, a federal petition is filed on the date it is placed in the prison mail system). Petitioner's § 2254 could not have been "filed" sooner than March 25, 2014, the date he indicated he placed it in the mail. (doc. 3 at 10.)

I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28

U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unrea-
>> sonable application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determin-
>> ation of the facts in light of the evidence presented in the State court
>> proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court

identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782,

792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreason-

ably extends a legal principle from [Supreme Court] precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should apply." 529

5

U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## III.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (GROUNDS 1(A-D))

In his first four grounds for relief, Petitioner claims that his counsel was ineffective during the trial proceedings when she failed to: (a) object to or timely object to the expert's testimony, (b) inform Petitioner about the consequences of his own testimony, (c) ask the forensic interviewer about a statement made by the complainant, and (d) request a ruling on the record regarding juror bias. (doc. 3 at 6-7a.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance

was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. at 691. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen* v. *Pinholster*, 563 U.S. 170, 131 S. Ct.1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690)). This standard not only gives trial counsel the benefit of the doubt; it affirmatively entertains the range of possible reasons he may have had for proceeding as he did. *Id*. at 1407.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This review is "doubly

deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

### A.      State Court Findings

In his state application for writ of habeas corpus, Petitioner raised the same issues he raises in his § 2254 petition, often with the exact same phrasing. (*See* doc. 3 at 6; doc.7-13 at 69-74.) After remand from the Texas Court of Criminal Appeals, the trial court made explicit findings of fact and conclusions of law on the same issues, incorporating the affidavit of Petitioner's counsel. *Ex parte King*, WR 77, 813-01, Supp. Rec., 18-27 (doc. 7-17 at 21-31.) The Court of Criminal Appeals then denied the state habeas application without a written order on the findings of the trial court without a hearing. *Ex parte King*, WR 77,813-01, at cover (March 19, 2014); (doc. 7-17 at 2.) The fact that it did not separately make explicit findings on every issue does not mean that it "merely arrived at a legal conclusion" unworthy of the presumption of correctness. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit findings of fact and implicit unarticulated findings necessary to support a state court's conclusions of mixed law and fact) (citing *Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983) (applying presumption of correctness to implicit finding regarding defendant's credibility, where such finding was necessarily part of the court's rejection of the defendant's claim)).   The denial of Petitioner's state writ application was an adjudication on the merits of all of his claims. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits").

B.    **Expert testimony**

Here, Petitioner first claims that trial counsel was ineffective when she failed to "object to, object timely to, or request instructions to disregard expert testimony impermissibly stating ultimate facts and legal conclusions, and that impermissibly commented on the truthfulness of the complainant's allegations." (doc. 3 at 6.)

In response this claim in his state writ application, trial counsel responded:

> During the testimony of Kimberly Green, the therapist, I objected to each and every violation of the current law and said objections were sustained. I followed through with requests for instructions to disregard.

(doc. 7-17 at 23.)   She cited to numerous portions of the reporter's record as examples of her objections, the judge's rulings, and her requests for instructions to disregard. *Id*. at 23-24.   She:

> Tried [her] best to keep all of the objectionable comments on the credibility of the complainant out, but it is my opinion that the current rules of evidence and the rulings of the appellate courts are inadequate to keep the jury from knowing that the therapists, the interviewers, and the prosecutors believe the complainants. . .. They circumvent the rules to make the jury know that everybody believes the child and there is very little that the defense counsel can do about it without appearing to the jury to be combative and trying to cover things up.

*Id.* at 24-25.

Based on counsel's affidavit, the state habeas court concluded that "[t]rial counsel was not deficient in her conduct as it appears it was trial strategy." *Id.* at 21. It also concluded that "[t]rial counsel was not constitutionally ineffective in advising [Petitioner] at the trial level" and that "[t]rial counsel was effective in her representation of [Petitioner] at the trial level." *Id.*  Petitioner cannot demonstrate that her approach was not one of reasoned trial strategy, let alone show that it rendered her performance deficient. *See Strickland*, 466 U.S. at 690; *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.1997) ("We will not find inadequate representation merely because, with the benefit of

9

hindsight, we disagree with counsel's strategic choices") (citing *Strickland*, 466 at 689–90).

The Court of Criminal Appeals denied Petitioner's state writ application on the findings of the trial court. *Ex parte King*, WR-77,831-01, at cover (doc. 7-17 at 2.) The state court's factual findings and credibility choices are presumed correct. Credibility choices, like express findings of historical fact, are entitled to a presumption of correctness on federal habeas corpus review. *See Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992) ("'[w]hen . . . a trial court fails to render express findings on credibility but makes a ruling that depends upon an implicit determination that credits one witness's testimony as being truthful, or implicitly discredits another's such determinations are entitled to the same presumption of correctness that they would have been accorded had they been made explicitly'") (quoting *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988)); *see also Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (applying presumption of correctness to trial court's implicit findings of fact against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim). The presumption afforded these findings in this case is even stronger because the trial judge and the state habeas judge were the same. (doc. 7-7 at 1; doc. 7-17 at 11, 21); *see generally Armstead v. Collins*, 37 F.3d 202, 207-08 (5th Cir. 1994) (where application was considered by same judge who presided over trial, paper hearing is adequate).

In denying Petitioner's state habeas application, the Court of Criminal Appeals made implicit credibility determinations in favor of trial counsel. (doc. 7-17, at 21.) The implicit and explicit factual findings and its credibility determinations are entitled to a presumption of correctness that may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Neal v. Puckett,* 239 F.3d 683, 696 (5th Cir. 2001) (noting that the focus of the "unreasonable application" test under § 2254(d) is on the ultimate legal conclusion that the state court reached).

Petitioner has not shown that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d). This claim must be denied.

## C.      Consequences of testifying

Petitioner next claims that trial counsel was ineffective when she "failed to inform Petitioner that the trial court's allowing the complainant to testify – during the State's case-in-chief – that Petitioner had previously been incarcerated was a potential error presentable on appeal, as such testimony has been widely held inadmissible." (doc. 3 at 6-6a.)  He also claims that counsel "never advised [him] that the potential error would be cured if [he] testified and revealed the extent of his criminal history, which involved him having been to prison." *Id*. at 6a. Finally, he contends that because he was "[u]naware of this consequence, Petitioner decided to testify . . . because counsel deprived him of his right to make an informed decision." *Id.*

In response to these claims in his state writ application, trial counsel stated:

> Despite his claims to the contrary, I specifically remember discussing this with [Petitioner] and explaining that the trial court's ruling on the admissibility of the complainant's statement could be a point of error on appeal and that he would be waiving that point of error if he testified because all of his previous convictions would come in. He decided that the better strategy was to pursue a not guilty verdict by denying the allegations directly to the jury rather than to hope for a reversal on appeal. We did have that specific conversation. I am certain.

(Doc. 7-17, at 25.)  Based on the affidavit, the state habeas court concluded that "[t]rial counsel was not deficient in her conduct as it appears it was trial strategy." *Id.* at 18. The state habeas court also concluded that "[t]rial counsel was not constitutionally ineffective in advising [Petitioner] at the trial

level" and that she " was effective in her representation of [Petitioner] at the trial level." *Id.*

      The Court of Criminal Appeals adopted these findings when it denied Petitioner's state writ application.  *Id.* at cover. Petitioner has failed to demonstrate that the state court's denial of these claims was objectively unreasonable.  This claim must be denied.

**D.**      **Forensic interviewer**

      Petitioner claims that counsel was ineffective when she "failed to elicit a statement from a forensic interviewer that the complainant made that counsel said was the 'crux' of the defense." (doc. 3 at 6a.)  He contends that "the complainant told the [forensic] interviewer that she was mad at Petitioner for getting her in trouble for 'messing with boys.'" *Id*. Counsel was allowed to question the complainant, who responded that "she did not remember making the statement." *Id.* Petitioner claims that counsel failed to ask the interviewer "if the complainant made the statement to her", and "[b]ecause of this failure, [his] 'fabrication' defense was never established or presented." *Id.*

      As an initial matter, trial counsel stated in her affidavit to the state habeas court that:

> I had watched the video-taped interview and knew that the complainant did make a statement to [Navarro County Children's Advocacy Center Counselor Kristi] Skains that [Petitioner] was telling her mother that she was messing with boys. Part of the trial strategy, one of the explanations from [Petitioner] as to why the complainant made up the allegations was [Petitioner] had suspected her of messing with boys and she did not want him to find out and whip her or to tell her mother. The complainant did not deny making the statement to Skains, she just said she did not remember. She basically did not remember anything I asked her. I though[t] this looked bad to the jury and that the jury would see just from her testimony that she was simply not wanting to respond to my questions. During a recess, I asked Skains if she remembered the complainant making the statement and she said she did not remember that statement specifically. So I determined that it would do no good to ask her about the statement unless we intended to use the video to prove it up. I was afraid that if we introduced a portion of the video, either the judge would allow the whole thing in under the rule of optional completeness or the jury would be left to wonder why they weren't allowed to see the whole thing and think the worst of the defendant. It was a part of the trial strategy to stay away from the video so as not to get the jury wondering why they would not see it. I determined at the outset of Skains

testimony that I did not want them to see the video wherein the complainant looks even younger and repeats the same allegations and more. In my opinion, the video was prejudicial to [Petitioner]. Further, during the complainant's testimony, she related an incident that we had not heard before regarding [Petitioner] pulling down her basketball (sic) and checking her privates to see if she had been messing with boys. The original strategy was to argue that the complainant made up the story because she was afraid [Petitioner] would find out and whip her and/or tell her mother she was messing with boys. When this allegation came out, I was a little unsure that this was a strategy that we wanted to pursue. The fact that he was so concerned she was messing with boys tended to make that allegation more believable. I decided to wait and see how [Petitioner's] testimony went and decide whether to recall Skains. We discussed that fact but we did not have anything else to argue other than that her mother put her up to it so [Petitioner] wanted to try to make that argument during his testimony. Ultimately the judge did not let any of [Petitioner's] speculation in. To recall Skains at that point would have been frivolous because the jury was not allowed to hear the entire argument. For a look at the crux of [Petitioner's] argument in this regard, see the hearings held outside the presence of the jury at 6 RR 136-144 and 6 RR 107-112.

(doc. 7-17 at 26-27.)

Based on counsel's affidavit, the state habeas court concluded that "[t]rial counsel was not deficient in her conduct as it appears it was trial strategy." *Id.* at 18. The state habeas court also concluded that "[t]rial counsel was not constitutionally ineffective in advising [Petitioner] at the trial level" and that she "was effective in her representation of [Petitioner] at the trial level." *Id.* The Court of Criminal Appeals adopted these findings when it denied Petitioner's state writ application. *Id.* at cover. Petitioner has failed to demonstrate that the state courts' denial of this claim was objectively unreasonable, so this third claim of ineffective assistance must be denied.

**E.      Juror bias**

Petitioner contends that trial counsel was ineffective when she "failed to request an express ruling on the record [regarding a specific juror's alleged bias] at the time the issue arose, or any other time for the remainder of trial." (doc. 3,  at 7a.) He argues that "[h]ad counsel done so, Petitioner would have absolutely been entitled to a new trial on appeal.*" Id.*

13

Petitioner presents only his own conclusory allegations to support his claim. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard,* 691 F.2d 796, 799 (5th Cir. 1982) (citations omitted); *see also Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983). Under Rule 2(c) of the Rules Governing Section 2254 cases, a petitioner is required to plead facts in support of his claims. "[T]he presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In addition, trial counsel testified in her affidavit that "there was no evidence in the record that the juror was in fact biased." (doc. 7-17 at 27.) The state habeas court concluded that "[t]rial counsel was not deficient in her conduct as it appears it was trial strategy." *Id.* at 18. The state habeas court also concluded that "[t]rial counsel was not constitutionally ineffective in advising [Petitioner] at the trial level" and that "[t]rial counsel was effective in her representation of [Petitioner] at the trial level." *Id*.

The Court of Criminal Appeals adopted these findings when the court denied Petitioner's state writ application. *Id.* at cover. Petitioner has failed to demonstrate that the state courts' denial of these claims was objectively unreasonable. This claim of ineffective assistance at trial is also without merit and must be denied.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (GROUND 2 (A-C))

Finally, Petitioner alleges that he was denied effective assistance of counsel on appeal when counsel failed to: (a) challenge the trial court's refusal to question a juror, (b) challenge the trial court's admission of irrelevant extraneous acts, and (c) present an adequate argument regarding the "disabled" juror. (doc. 3 at 6, 6b.) His trial counsel at trial also represented him on direct appeal.

Petitioner presented these claims in his application for state writ of habeas corpus, which was

14

denied.  This was an adjudication on the merits.  *Singleton*, 178 F. 3d at 384; *Ex parte Torres*, 943

S.W.2d at 472.   He must again must demonstrate this decision was either an unreasonable

application of clearly established federal law or an unreasonable application of the facts in light of

the evidence presented. 28 U.S.C. § 2254(d).

The federal constitution guarantees a criminal defendant the effective assistance of counsel

on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective

is also determined by using the standard enunciated in *Strickland*.   Under *Strickland*, Petitioner must

show a reasonable probability that but for his counsel's deficient representation, he would have

prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every

non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999).

"Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of

reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir.2000) (quoting *Strickland,*

466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or

make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments

based on directly controlling precedent should be discovered and brought to the court's attention."

*Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate

counsel was deficient, courts must consider whether the challenge "would have been sufficiently

meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.  Petitioner

has failed to make these showings.

A.      **Juror questioning**

Counsel testified via affidavit about Petitioner's claims of ineffective assistance on appeal.

(doc. 7-17 at 27-28.)  In response to Petitioner's claim that appellate counsel was ineffective for failure to challenge the trial court's refusal to question a juror, counsel explained that:

> I did not believe that this argument would have been successful on appeal because there was no evidence in the record that the juror was in fact biased therefore, no harm could be shown. In determining whether to file a motion for new trial on this point, either myself of my investigator tried to contact the juror but either we were unable to contact the juror or the juror would not speak to us. I cannot recall, but I did attempt to get evidence of bias but was unable to do so.

*Id.* at 27.  The state habeas court found that appellate counsel "was not deficient in her conduct at it appears it was appellate strategy." *Id.* The state habeas court further found that "[a]ppellate counsel was not constitutionally ineffective in advising [Petitioner] at the appellate level" and "[a]ppellate counsel was effective in her representation of [Petitioner] at the appellate level." *Id*. at 18. Petitioner has failed to establish that he would have prevailed on appeal.

The Court of Criminal Appeals denied these claims when it denied Petitioner's state writ application. The state courts' factual findings and credibility choices are presumed correct, have not been rebutted by clear and convincing evidence, and are dispositive of the claim. Because Petitioner has failed to demonstrate that the decision of the Court of Criminal Appeals was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented, this claim must be denied. 28 U.S.C. § 2254(d).

**B.**     **Admission of extraneous acts**

Petitioner's appellate counsel responded to his claim that she was ineffective when she failed to challenge the trial court's admission of irrelevant extraneous acts.  Counsel addressed each of his allegations in her affidavit:

> a. Failure to argue that the trial court erred in allowing the complainant to testify that [Petitioner] threatened others with a gun.

I considered this argument on appeal but ultimately rejected it because I did not believe I could show harm, particularly given the fact that it was not a handgun, and the fact that there was ample other evidence that came in regarding [Petitioner's] criminal activities. To argue that the jury could have convicted [Petitioner] simply because he was a bad guy that had held a long gun when talking to people at his own home was too much of a stretch for me given that they also heard through completely admissible evidence that he had been convicted numerous times of selling drugs, felon in possession of a firearm, unauthorized use of a vehicle and assault.

b. Failure to argue that the trial court erred in allowing the complainant to testify that [Petitioner] touched his (sic) eight year old sister's butt.

According to the rules of evidence, extraneous bad acts are allowable to rebut a defensive theory. I believed that this evidence was admissible to rebut our defensive theory that the complainant misinterpreted [Petitioner's] touching. We argued at trial that [Petitioner] was touching the complainant to see if she wet the bed or to wake her up when she wet the bed. There was no evidence, however that the sister wet the bed.

c. Failure to argue that the trial court erred in allowing the complainant to testify that Petitioner had her take drugs to his girlfriend Shea.

The state argued at trial that I opened the door by inquiring into the relationship between [Petitioner] and Shea. I believe the state is correct. I believed that I did open the door to the complainant's description of their relationship that they did drugs together, and further to the statement that she knew they did drugs together because he asked her to take them to her. [Petitioner] did not inform me that he had ever done this and so as I asked the question, I had no idea that the complainant would respond the way she did, so I unintentionally opened the door. An argument to the contrary would have been frivolous.

(doc. 7-17 at 27-28.)

The state habeas court found that appellate counsel "was not deficient in her conduct at it appears it was appellate strategy." *Id*. The state habeas court further found that "[a]ppellate counsel was not constitutionally ineffective in advising [Petitioner] at the appellate level" and "was effective in her representation of [Petitioner] at the appellate level." *Id*. at 18. Petitioner has failed to establish that he would have prevailed on appeal.

The Court of Criminal Appeals denied these claims when the court denied Petitioner's state

writ application. SHCR-01 (EventID: 2536781) at cover. The state courts' factual findings and credibility choices are presumed correct, have not been rebutted by clear and convincing evidence, and are dispositive of the claim. Because Petitioner has failed to demonstrate that the decision of the Court of Criminal Appeals was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented, his claim that counsel was ineffective on appeal must be denied. 28 U.S.C. § 2254(d).

## C.    "Disabled" juror

Finally, Petitioner claims that appellate counsel was ineffective when she failed to present an adequate argument regarding a "disabled" juror. (doc. 3 at 6b.)  Counsel responded to this claim in her affidavit:

> I believe I made a very good argument and stand by that argument. However, I also
> believe that the trial court did err in finding the juror to be disabled because of bias
> and I believe that the appellate court erred in failing to sustain the point of error on
> appeal.

*Id.* The state habeas court found that appellate counsel "was not deficient in her conduct at it appears it was appellate strategy." *Id.* The state habeas court further found that "[a]ppellate counsel was not constitutionally ineffective in advising [Petitioner] at the appellate level" and "was effective in her representation of [Petitioner] at the appellate level." *Id.* at 18. Petitioner has failed to establish that he would have prevailed on appeal.

The Court of Criminal Appeals denied these claims when the court denied Petitioner's state writ application. (doc. 7-17 at 21.)  The state courts' factual findings and credibility choices are presumed correct, have not been rebutted by clear and convincing evidence, and are dispositive of the claim. Because Petitioner has failed to demonstrate that the decision of the Court of Criminal Appeals was an unreasonable application of clearly established federal law or an unreasonable

application of the facts in light of the evidence presented, this last claim that counsel was ineffective on appeal must be denied. 28 U.S.C. § 2254(d).

## X. RECOMMENDATION

The petition for habeas corpus relief under § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 9th day of October, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE